$350

FILED
MAY 20 2008
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA MOYER, | ) | |
| | ) | |
| | ) | CIVIL ACTION NO: |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| vs. | ) | 08 CV 2359 |
| | ) | |
| YUM BRANDS INC. d/b/a Taco Bell, | ) | |
| a North Carolina corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## CIVIL ACTION COMPLAINT

The plaintiff, Debra Moyer, by and through her counsel of record, The Ferrara Law Firm, LLC and Marler Clark, LLP, PS alleges and complains as follows:

### PARTIES

1. Plaintiff Debra Moyer, at all times material hereto, was and remains an adult resident of Boyertown, Pennsylvania.

2. The Defendant Yum Brands Inc. d/b/a Taco Bell (hereinafter referred to as "Taco Bell"), is a North Carolina corporation with its principal place of business in Kentucky. The defendant Taco Bell owned and operated a Taco Bell restaurant located in Gilbertsville, Montgomery County, Pennsylvania. The defendant Taco Bell, at all times material hereto, was carrying on its ordinary course of business of the manufacture, preparation, service, and sale of food to its restaurant customers, including at its restaurant location in Montgomery County, Pennsylvania.

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, diversity of citizenship, because Debra Moyer is a citizen of the Commonwealth of Pennsylvania, the corporate defendant is a citizen of a different state, and the amount in controversy exceeds seventy five thousand ($75,000.00) dollars, exclusive of interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391 because the plaintiff resides in this district, and the defendant engaged in substantial business in this district.

## FACTS

### Outbreak

5. The E. coli O157:H7 outbreak at issue was associated with the consumption of lettuce at Taco Bell restaurants, and occurred amongst residents of Delaware, Pennsylvania, New Jersey, and New York. The first cases were identified in late November 2006, each victim experiencing onset of illness at some point after November 15. In its summary of the outbreak, the Center for Disease Control (CDC) reported as follows on December 14, 2006:

> This outbreak was clearly linked to Taco Bell restaurants in the northeastern United States. As of 12 PM (ET) December 14, 2006, Thursday, 71 persons with illness associated with the Taco Bell restaurant

outbreak have been reported to CDC from 5 states: New Jersey (33), New York (22), Pennsylvania (13), Delaware (2), and South Carolina (1). States with Taco Bell restaurants where persons confirmed to have the outbreak strain have eaten are New Jersey, New York, Pennsylvania, and Delaware. (The patient from South Carolina ate at a Taco Bell restaurant in Pennsylvania). Other cases of illness are under investigation by state public health officials.

6. By the end of 2006, 78 probable and confirmed cases of E. coli O157:H7 had been reported. Among these, at least 53 victims were hospitalized, and 8 people developed a severe life-threatening complication, Hemolytic Uremic Syndrome ("HUS"), including plaintiff Debra Moyer.

7. The case control investigation led by CDC epidemiologists concluded that "[S]hredded lettuce consumed at Taco Bell restaurants in the northeastern United States was the most likely source of the outbreak".

8. The New York Department of Health summarized the relevant findings of the CDC studies and of its own investigation in its summary report on the outbreak, as follows:

> The national outbreak investigation summary is not available as of April 1, 2007. Preliminary findings of the multi-state outbreak investigation, including the case control study, reported by the Food and Drug Administration (FDA) on December 13, 2006 considered lettuce to be the

single most likely source of the outbreak. The review of the food items and ingredients associated with NYS cases was consistent with the preliminary findings of the national investigation.

9. A traceback of the implicated lettuce by the FDA indicated that the Taco Bell restaurants implicated in the outbreak had been supplied with shredded lettuce by only one processor, Ready Pac Produce, Inc..

10. E. coli O157:H7 outbreaks associated with leafy greens such as lettuce are not new. In the past twelve years, twenty-two E. coli O157:H7 outbreaks have been linked to consumption of contaminated leafy greens. In 2006, several multi-state E. coli O157:H7 outbreaks associated with leafy greens were investigated.

11. In November 2005, the FDA addressed its concerns to California lettuce producers in its "Letter to California Firms that Grow, Pack, Process, or Ship Fresh and Fresh-Cut Lettuce". In the letter the FDA counted 18 outbreaks of *E. coli* O157:H7 associated with fresh or fresh-cut lettuce occurring between 1995 and 2005 which resulted in 409 illnesses and 2 deaths. The FDA stated that industry's role in preventing these illnesses is crucial because "these products are commonly consumed in their raw state without processing to reduce or eliminate pathogens."

**Debra Moyer's Illness**

12. On November 21, 2006, Debra Moyer purchased and consumed food, including lettuce, from the Taco Bell restaurant located on East Philadelphia Avenue in

Gilbertsville, Montgomery County, Pennsylvania. The lettuce was contaminated with pathogenic *E. coli* O157:H7 bacteria.

13. The plaintiff's gastrointestinal illness began on November 26, 2006. At first, symptoms consisted severe abdominal cramps and diarrhea. Her symptoms continued over the course of the next several days. On November 29, 2006, she experienced severe and bloody diarrhea, an ambulance was called, and she was admitted to the St. Joseph Medical Center Critical Care Unit (CCU) with a diagnosis of lower gastrointestinal bleeding and infectious enteritis.

14. Debra Moyer remained in the CCU at St. Joseph Medical Center until December 3, 2006. Her BUN and creatinine levels indicated her kidneys were quickly losing functioning. On December 1, 2006, she experienced her first seizure. She then experienced at least three additional seizures, and continued to have a dramatic decline in her health. Her medical team then determined she had thrombotic thrombocytopenic purpura (TTP), also known as "adult HUS". TTP is a rapidly fatal and occasionally protracted disease often associated with bleeding into the tissues, formation of clots in many organs, and central nervous system involvement.

15. Debra Moyer needed to be transferred to the renal unit at the Reading Hospital and Medical Center. On December 3, 2006, she was admitted to the Reading Hospital Intensive Care Unit (ICU) and immediately underwent her first plasmapheresis procedure.

16. Debra Moyer remained at Reading Hospital until she was discharged on December 30, 2006, after approximately thirty one days of hospitalization. During that period, she spent many days in a coma, and suffered though numerous seizures and hallucinations. Her acute renal failure required her to go through numerous invasive hemodialysis and plasmapheresis treatments. Even after her discharge home, Ms. Moyer had to continue with additional out patient plasmapheresis treatment for many weeks.

17. Ms. Moyer has sustained a large degree of permanent renal injury. Such a deterioration of kidney function carries a significant risk of end-stage renal disease, hypertension and cardiovascular morbidity and mortality. In addition, even without this substantial residual renal deficit, just the fact that she did require dialysis during her treatment puts her at increased risk of impaired kidney function, hypertension, and cardiovascular disease.

## COUNT ONE- BREACH OF WARRANTY

18. Plaintiff incorporates by reference and makes a part of this Count each and every foregoing paragraph of this Complaint.

19. Defendant is a manufacturer, distributor, and seller of an adulterated food product.

20. The defendant is subject to liability to the plaintiff for its breach of express and implied warranties made with respect to the contaminated food product sold to plaintiff, including the implied warranties of merchantability and of fitness for a particular use. Specifically, the defendant expressly warranted, through its sale of food to

the public, that the food sold to the plaintiff was fit for human consumption, and not otherwise adulterated or injurious to health.

21. The plaintiff alleges that the food sold by the defendant and consumed by plaintiff, which was contaminated with *E. coli* O157:H7 and related filth and adulteration, would not pass without exception in the trade, and was thus in breach of the implied warranty of merchantability.

22. The plaintiff further alleges that the contaminated food sold by the defendant and consumed by the plaintiff was not fit for the uses and purposes intended by the plaintiff or the defendant, *i.e.*, human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

23. As a direct and proximate result of the breaches of warranty by defendant, and its agents, servants, and/or employees, plaintiff suffered the injuries, damages, and losses set forth more fully above.

## COUNT TWO- STRICT LIABILITY

24. Plaintiff incorporates by reference and makes a part of this Count each and every foregoing paragraph of this Complaint.

25. The defendant owed a duty to the plaintiff to manufacture, process, pack, ship, and sell food that was not adulterated, was fit for human consumption, was reasonably safe in construction, and was free of pathogenic viruses or other substances injurious to human health. The defendant breached this duty.

26. The defendant owed a duty to the plaintiff to provide adequate warnings about the non-obvious danger of its food products, including warnings and instructions indicating that the food might contain pathogenic viruses, including *E. coli* O157:H7. The defendant breached this duty.

27. The defendant owed a duty to the plaintiff to prepare and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable and ordinary consumer. The defendant breached this duty.

28. Because the food that the defendant manufactured, processed, packed, shipped, and sold was adulterated, not fit for human consumption, not reasonably safe in design and construction, lacked adequate warnings and instructions, and was unsafe to an extent beyond that contemplated by the ordinary consumer, the defendant is liable to the plaintiff for all the harm proximately flowing from the plaintiff's consumption of the defendant's contaminated and adulterated food products, and as such the defendant is strictly liable to the plaintiff for such harm, injuries, damages, and losses set forth more fully above.

29. As a direct and proximate result of the conduct by defendant, and its agents, servants, and/or employees, plaintiff suffered the injuries, damages, and losses set forth more fully above.

## **COUNT THREE-NEGLIGENCE**

30. Plaintiff incorporates by reference and makes a part of this Count each and every foregoing paragraph of this Complaint.

31. The defendant had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of the food, including the applicable provisions of the federal Food, Drug and Cosmetic Act, all of which prohibit the processing, manufacture, packaging, and sale of any food that is adulterated or otherwise injurious to health.

32. The food that defendant processed, manufactured, packaged, and sold, and that the plaintiff eventually consumed, was adulterated within the meaning of the federal Food, Drug and Cosmetic Act and similar statutes because it contained a deleterious substance that rendered it injurious to health, *i.e.*, *E. coli* O157:H7 bacteria.

33. The defendant violated federal, state, and local food safety regulations by its processing, manufacture, packaging, and sale of adulterated food. These federal, state, and local food safety regulations are applicable here, and establish a positive and definite standard of care in the processing, manufacture, packaging, and sale of food. The violation of these regulations constitutes negligence.

34. The plaintiff is in the class of persons intended to be protected by these statutes and regulations, and plaintiff was injured as the direct and proximate result of the defendant's violation of applicable federal, state, and local food safety regulations.

35. The defendant was negligent in the processing, manufacture, packaging, distribution, and sale of a food product that was adulterated with *E. coli* O157:H7, not fit for human consumption, and not reasonably safe because it failed to provide adequate warnings or instructions.

36. Defendant was also negligent in one or more of the following:

   a. in failing to use supplies and raw materials in producing its food that were in compliance with applicable federal, state, and local laws, ordinances and regulations;

   b. in failing to use supplies and raw materials in producing its food that were from reliable sources;

   c. in failing to use supplies and raw materials in producing its food that were clean, wholesome, free from adulteration, and fit for human consumption;

   d. in negligently selecting or retaining its suppliers, or other agents or subcontractors;

   e. in failing to adequately supervise its suppliers, or other agents or subcontractors or failing to provide them with adequate standards;

   f. in failing to properly supervise, train, discipline and monitor its employees, or the employees of its agents or subcontractors, engaged in the preparation and sale of its food products, to ensure compliance with the defendant's operating standards or with all applicable health regulations; and

   g. in failing to properly supervise, train, and monitor its employees engaged in the manufacture, preparation, and delivery of the food product ultimately sold to the public and plaintiff.

37. As a direct and proximate result of the conduct of defendant and its agents, servants, and/or employees, plaintiff suffered the injuries, damages, and losses set forth more fully above.

## DAMAGES

38. The plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the defendant, in

an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## JURY DEMAND

The plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays for judgment against the defendant Taco Bell as follows:

A.  Ordering compensation for all general, special, incidental, and consequential damages suffered by the plaintiff as a result of the defendant's conduct;

B.  Awarding plaintiff her reasonable attorneys fees and costs, to the fullest extent allowed by law; and

C.  Granting all such additional and/or further relief as this Court deems just and equitable.

DATED this 20th day of May, 2008.

_____
Michael A. Ferrara, Jr., Esquire
PA Bar Id. No. 16035
The Ferrara Law Firm, LLC
601 Longwood Avenue at State Highway 38
Cherry Hill, NJ 08002
Telephone: (856) 779-9500
Fax: 856-661-0369
e-mail: mferrara@ferraralawfirm.com


William D. Marler, Esquire
WA Id. No. 17233
MARLER CLARK, LLP, PS
701 Fifth Avenue, Suite 6600
Seattle, WA 98104
Telephone: (206) 346-1888
Fax: (206) 346-1898
e-mail: wmarler@marlerclark.com

ATTORNEYS FOR THE PLAINTIFF